UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re ) | Chapter 11 |
| ) | |
| REMAN INDUSTRIES, INC., ) | Case No. 15-23093 |
| ) | |
| Debtor. ) | Hon. Carol A. Doyle |

## FINAL ORDER AUTHORIZING
## USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION

This matter coming on to be heard on the motion (the "Motion") of Reman Industries, Inc., debtor and debtor in possession (the "Debtor"), for the entry of interim and final orders authorizing the Debtor to use the cash collateral of MB Financial Bank, N.A., as successor by merger to Cole Taylor Bank (collectively, "Lender") and to provide adequate protection to Lender, pursuant to 11 U.S.C. §§ 361, 363(c)(2), 363(e) and Fed. R. Bankr. P. 4001; due and proper notice of the Motion having been given to all parties entitled thereto; the Debtor and Lender having agreed to the Debtor's use of Lender's cash collateral on an interim basis and pending a final hearing on the Motion ("Final Hearing") pursuant to the budget attached hereto as Exhibit A (the "Budget") and the terms of this order (the "Order"); a preliminary hearing having been held on the Motion pursuant to the provisions of Fed. R. Bankr. P. 4001(c)(2);

The Court finding that:

A.  On July 6, 2015 (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition for relief under chapter 11 of title 11, Unites States Code (the "Bankruptcy Code"). The Debtor is continuing to operate its business and manage its property as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B.  This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2726891.2.25484.58300

C. The Debtor acknowledges, agrees and stipulates that:

(i) On May 29, 2013, Lender made two (2) loans (collectively, the "Loan") to Debtor evidenced by (i) a Promissory Note dated May 29, 2013 in the original principal amount of $1,000,000.00, as amended by the Promissory Note dated June 1, 2014 in the original principal amount of $1,000,000.00 ("Note 1"); (ii) Promissory Note dated May 29, 2013 in the original principal amount of $337,400.00 ("Note 2" and together with Note 1, the "Notes") and (iii) a Business Loan Agreement (Asset Based) dated June 1, 2014 ("Loan Agreement").

(ii) Lender holds a valid and properly perfected first priority security interest in and lien on all of its business assets, including without limitation, all personal property including accounts of the Debtor; as more fully described in the Loan Documents (collectively, including Cash Collateral (as defined below), the "Collateral") pursuant to (a) a Commercial Security Agreement dated May 29, 2013 ("Security Agreement") (b) UCC Financing Statement filed on July 5, 2013 as Document No. 18365057; (the, "Financing Statement"). The Debtor's cash constitutes the cash collateral of Lender, as that term is used in section 363(c) of the Bankruptcy Code (the "Cash Collateral").

(iii) The Notes, Loan Agreement, Security Agreement, Financing Statement, and all other documents delivered in connection to and supporting the Loan are referred to as the "Loan Documents."

(iv) In accordance with the terms of the Loan Documents, as of the Petition Date, Lender was owed not less than $729,451.50 in principal and interest, plus any other fees, costs and expenses (the "Indebtedness"). The Debtor further acknowledges and stipulates that, in accordance with the Loan Documents, Note 1 is fully matured and outstanding.

2

2726891.2.25484.58300

(v) As of the Petition Date, (a) the Loan Documents are valid and binding agreements and obligations of the Debtor and are enforceable against the Debtor in accordance with their terms; (b) the Financing Statements and related Loan Documents (i) constitute valid, binding, enforceable and perfected first priority liens and security interests in the Collateral; and (ii) are not subject to avoidance, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and (c) the Indebtedness constitutes the legal, valid, binding obligations of the Debtor, and the Indebtedness and any amounts paid at any time to Lender on account thereof or with respect thereto are not subject to (i) any objection, offset, defense or counterclaim of any kind or nature; or (ii) avoidance, reduction, disallowance, impairment, re-characterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

(vi) The Debtor has waived, discharged and released any right it may have to challenge the liens and claims asserted by the Lender as set forth in the this Order, including without limitation, the Indebtedness and the validity, priority and extent of the Lender's liens.

IT IS HEREBY ORDERED that:

1. The Motion is granted on an interim basis, subject to the terms and conditions set forth in this Order.

2. **Budget; Limited Use of Collateral**. Subject to the terms and conditions of this Order, the Debtor is authorized to use Lender's cash collateral in accordance with the Budget to pay actual, ordinary, and necessary expenses of the Debtor provided that Debtor's disbursements may not vary from the Budget by more than 10% as to any line item shown on the Budget, nor may Debtor make disbursements for any expense item that is not listed as a line item on the

3

Budget without prior written consent of Lender or further authority of the Court. The Budget may be modified with the prior written consent of Lender. The Debtor shall not use Cash Collateral except in the ordinary course of business of the Debtor and in accord with the terms of this Order and the Budget. Except for the sale or use of inventory in the ordinary course of business, Debtor shall not dispose of any of its property without the prior written consent of Lender.

3. **Reporting; Access to Records.** Debtor shall provide to Lender on a monthly basis reports reflecting sales, inventory, accounts receivable aging, accounts receivable detail, accounts payable aging and accounts payable detail. During the term of this Order, the Debtor authorizes Lender to verify cash balances, deposits, withdrawals and other bank account information. Debtor shall give Lender access to the Debtor's offices and books and records during normal business hours to inspect Debtor's activities and financial affairs. Debtor shall provide Lender with collateral and accounting reports and information as Debtor was required to provide to Lender under the Loan Documents prior to the Petition Date.

4. **Maintenance of Insurance; Assets.** Debtor shall maintain and pay premiums for insurance to cover all of its assets from fire, theft and water damage and all other forms of insurance currently maintained, including general liability. All insurance policies shall provide coverage to Lender under lenders loss payable endorsement. Debtor will properly maintain its assets.

5. **Grant, Perfection and Enforcement of Replacement Liens and Security Interest in All Collateral and Other Adequate Protection.** In consideration for the use of its Cash Collateral (solely upon the terms and conditions of this Order), Lender shall receive the following (collectively the "Adequate Protection"):

4

(a) The Debtor shall continue to maintain all of its bank accounts at Lender ("Cash Collateral Accounts") and deposit all Cash Collateral exclusively in the Cash Collateral Accounts.

(b) To the extent there is a diminution in Lender's interests in the Collateral after the Petition Date (whether the reason for such diminution is as a result of, arises from, or is attributable to, the imposition of the automatic stay, the use of cash collateral or depreciation, sale, loss, or otherwise), Lender is hereby granted, retroactive to the Petition Date and without the necessity of any additional documentation or filings, valid, enforceable, non avoidable and fully perfected liens (the "Adequate Protection Liens") of the highest available priority subject only to any valid and enforceable preexisting liens upon (i) any property that the Debtor acquires after the Petition Date, but excluding any avoidance actions under chapter 5 of the Bankruptcy Code, and (ii) any proceeds generated from such property.

(c) The Debtor shall make monthly payments to Lender in the amount of $8,197.83 per month, payable on the 1st date of each month (the "AP Payments"), with the first payment having been due August 1, 2015. In addition, upon the entry of the initial Interim Order, the Debtor paid the interest due for July, 2015, on Note 1 in the amount of $1,900.00.

(d) Under the circumstances, the Adequate Protection is reasonable and sufficient to protect the interests of the Lender, *provided however*, nothing contained herein shall affect or impair the Lender's right to seek additional adequate protection of its interests, or to petition the court for relief from the automatic stay under section 362 of the Bankruptcy Code.

2726891.2.25484.58300

6. This Order shall be sufficient and conclusive evidence of the validity, enforceability and perfection of the Adequate Protection Liens, whether or not Lender elects to file or record financing statements, any other documents, or to take such other steps as may otherwise be required to obtain, evidence or perfect such liens under applicable law; and Lender may, in its sole discretion, but shall not be required to, file a certified copy of this Order in any filing or recording office in any jurisdiction in which the Debtor has real or personal property, and such filing or recording shall be accepted and shall constitute further evidence of perfection of its liens and security interests.

7. The entry of this Order is without prejudice to the Debtor's right to seek authority to use additional cash collateral if the Debtor determines that the cash collateral use authorized by this Order is insufficient.

8. **Challenge Procedure**. Any (a) committee of unsecured creditors appointed in this case (the "Committee") shall have sixty (60) days from the date of appointment of the Committee; and (b) any other party in interest (other than the Debtor) shall have sixty (60) days from the entry of this Order (the applicable date, the ("Investigation Termination Date") to investigate the validity, perfection and enforceability of the Lender's liens on and security interest in the Collateral as of the Petition Date (the "Pre-Petition Liens") and the amount of the Indebtedness or to assert any other claims or causes of action against Lender. If the Committee (if appointed), or any party in interest (other than the Debtor), determines that there may be a challenge by the Investigation Termination Date, such Committee (if appointed) or other party interest shall have only until the Investigation Termination Date to commence an adversary proceeding or contested matter (each, a "Challenge"), as required by the applicable Bankruptcy Rules, on behalf of the Debtor's estate setting forth the basis of any such Challenge. In no event shall the filing of any such Challenge affect any of the rights, privileges, powers or remedies of

6

Lender under this Order or the Loan Documents pending a ruling on such Challenge. If no Challenge is filed on or before the Investigation Termination Date (or such other later date as extended by the written consent of the Debtor and Lender), then the agreements, acknowledgements, releases and stipulations contained in paragraph C of this Order shall be irrevocably binding on the Debtor's estate, the Committee (if appointed) and all other parties in interest without further action by any party or this Court.

9. The Debtor is authorized to do and perform all acts, to make, execute and deliver all instruments and documents, and to pay any amounts as provided under this Order, which may be reasonably required or necessary for the Debtor's full and timely performance under this Order.

10. Lender's consent and the Debtor's continued authority to use Lender's cash collateral under this Order shall be effective immediately, retroactive to October 29, 2015, and shall extend through November 18, 2015.

11. **Events of Default**. If an Event of Default (as defined in this Order) occurs, Lender may seek to terminate the Debtor's authority to use of Cash Collateral. An "Event of Default" under this Order shall mean any one of the following:

   a. Debtor's failure to maintain appropriate insurance for the Collateral.

   b. If Debtor pays obligations not shown on the Budget without the prior written consent of Lender or further authority from this Court, or pays expenses in excess of 10% of the budgeted expenses.

   c. If any certificate, representation or warranty made after the Petition Date by the Debtor or under this Order or any certificate, report or financial statement delivered to Lender pursuant to the foregoing shall prove to have been false or misleading in any material respect as of the time when made or given.

   d. Debtor fails to provide when due any reports or accounting information required by this Order or access to its books and records.

   e. Any termination by this Court of the Debtor's use of cash collateral.

7

  f.  The lifting of the automatic stay permitting Lender to take possession of all or any part of the Collateral.

  g.  Failure to make the Adequate Protection Payments when due.

12. Any stay, modification, reversal or vacation of this Order shall not affect the validity of any obligation of the Debtor to the Lender incurred pursuant to this Order. Notwithstanding any such stay, modification, reversal or vacation, all use of Cash Collateral incurred by the Debtor pursuant hereto prior to the effective date of any such stay, modification, reversal or vacation, shall be governed in all respects by the provisions hereof and the Lender shall be entitled to all the rights, privileges and benefits of this Order, including without limitation, the Adequate Protection Liens granted herein.

13. **Term**. Unless earlier terminated upon the occurrence of an Event of Default, the Debtor's right to use Cash Collateral hereunder shall commence on the date hereof, retroactive to October 29, 2015, and expire as of 5:00 p.m. (Central) on November 18, 2015. Notwithstanding such expiration or other termination, or modification hereof, Lender shall be entitled to the liens, priorities and other rights provided herein to the extent that the Debtor has used Lender's Cash Collateral following the date hereof. The Debtor's use of Cash Collateral may be extended by further order of Court without the necessity of the Debtor filing another motion for authority to use Cash Collateral.

DATED: NOVEMBER 6, 2015

           ENTER: *Carl A. Doyle*

AGREED TO:

REMAN INDUSTRIES, INC.        MB Financial Bank, N.A.

By: /s/ Joel A. Schechter                          By: /s/ Miriam R. Stein
    Its Attorney                                       Its Attorney

By: /s/ Joel A. Schechter                          By: /s/ Miriam R. Stein
    Its Attorney                                       Its Attorney

2726891.2.25484.58300

EXHIBIT A

Remax
Cash Flow Forecast

| Sunday | WK 1 Wk starting 10/4/2015 Fcst. | WK 2 Wk starting 10/11/2015 Fcst. | WK 3 Wk starting 10/18/2015 Fcst. | WK 4 Wk starting 10/25/2015 Fcst. | WK 5 Wk starting 11/1/2015 Fcst. | WK 6 Wk starting 11/8/2015 Fcst. | WK 7 Wk starting 11/15/2015 | WK 8 Wk starting 11/22/2015 | WK 9 Wk starting 11/29/2015 | WK 10 Wk starting 12/6/2015 | WK 11 Wk starting 12/13/2015 | WK 12 Wk starting 12/20/2015 | WK 13 Wk starting 12/27/2015 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Cash Balance | 60,300 | 62,283 | 64,266 | 66,249 | 80,232 | 82,990 | 85,748 | 88,506 | 91,264 | 94,022 | 96,005 | 97,988 | 99,971 |
| Incoming Cash: | | | | | | | | | | | | | |
| Customer payments | 54,000 | 54,000 | 54,000 | 54,000 | 54,000 | 54,000 | 54,000 | 54,000 | 54,000 | 54,000 | 54,000 | 54,000 | 54,000 |
| Total Incoming Cash | 54,000 | 54,000 | 54,000 | 54,000 | 54,000 | 54,000 | 54,000 | 54,000 | 54,000 | 54,000 | 54,000 | 54,000 | 54,000 |
| Cash Disbursements: | | | | | | | | | | | | | |
| Materials & Supplies | 12,000 | 12,000 | 12,000 | | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 |
| Rent | 8,400 | 8,400 | 8,400 | 8,400 | 8,400 | 8,400 | 8,400 | 8,400 | 8,400 | 8,400 | 8,400 | 8,400 | 8,400 |
| Utilities | 1,000 | 1,000 | 1,000 | 1,000 | 850 | 850 | 850 | 850 | 850 | 1,000 | 1,000 | 1,000 | 1,000 |
| Freight | 1,000 | 1,000 | 1,000 | 1,000 | 850 | 850 | 850 | 850 | 850 | 1,000 | 1,000 | 1,000 | 1,000 |
| Insurance | 1,000 | 1,000 | 1,000 | 1,000 | 750 | 750 | 750 | 750 | 750 | 1,000 | 1,000 | 1,000 | 1,000 |
| Health Insurance | 1,000 | 1,000 | 1,000 | 1,000 | 800 | 800 | 800 | 800 | 800 | 1,000 | 1,000 | 1,000 | 1,000 |
| Telephone | 200 | 200 | 200 | 200 | 175 | 175 | 175 | 175 | 175 | 200 | 200 | 200 | 200 |
| Payroll and Payroll Taxes | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 |
| Payroll Processing Fees | 132 | 132 | 132 | 132 | 132 | 132 | 132 | 132 | 132 | 132 | 132 | 132 | 132 |
| Principal - Bank | 1,585 | 1,585 | 1,585 | 1,585 | 1,585 | 1,585 | 1,585 | 1,585 | 1,585 | 1,585 | 1,585 | 1,585 | 1,585 |
| Interest - Bank | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 |
| Bank/Merchant - Fees | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 |
| Total Cash Disbursements | 52,017 | 52,017 | 52,017 | 40,017 | 51,242 | 51,242 | 51,242 | 51,242 | 51,242 | 52,017 | 52,017 | 52,017 | 52,017 |
| Net cash flow | 1,983 | 1,983 | 1,983 | 13,983 | 2,758 | 2,758 | 2,758 | 2,758 | 2,758 | 1,983 | 1,983 | 1,983 | 1,983 |
| Ending Cash Balance | 62,283 | 64,266 | 66,249 | 80,232 | 82,990 | 85,748 | 88,506 | 91,264 | 94,022 | 96,005 | 97,988 | 99,971 | 101,954 |